UNITED STATES of America, Plaintiff,

v.

Clarence Lovay RUSH and Mariah
Roxanna Rush, Defendants.

Crim. No. 82–66.

United States District Court,
S.D. Iowa.

Nov. 26, 1982.

Richard Turner, U.S. Atty., Joseph Beck, Asst. U.S. Atty., S.D. Iowa, Des Moines, Iowa, for plaintiff.

Troyce Wheeler, Council Bluffs, Iowa, for defendants.

## RULING AND ORDER

STUART, Chief Judge.

This is a criminal case tried to the Court upon stipulated evidence as to the government's case and a written summary of testimony for the defendants, filed as an offer of proof. The parties agreed that the case could be submitted to the Court for its findings of fact and conclusions of law upon the stipulation and the defendant's offer of proof, and the Court will proceed in accordance with that agreement.

On June 30, 1982 a five count indictment was returned against these defendants. On October 4, 1982, the date set for trial, the government dismissed the last four counts of the indictment. This trial involves only

Count 1 which charges violation of 18 U.S.C. § 1709 in the following language:

That on or about the 16th day of December, 1981, at Elliott, Iowa * * * Clarence Lovay Rush and Mariah Roxanna Rush, while employed by the U.S. Postal Service as postmasters, did embezzle, steal and remove mail, to-wit: an envelope containing two checks addressed and payable to Richard S. Vance, and removed said checks from said envelope which was entrusted to them and had come into their possession as postmasters and was intended to be conveyed to Richard S. Vance. * * *

During pretrial discussions, the government stated that it sought to convict Mrs. Rush as an aider and abettor of her husband's actions rather than for her actions as postmaster at a different post office.

The defendants are husband and wife, and both are postmasters in small Iowa communities. Mrs. Rush had previously been married to Richard S. Vance. The mail matter involved was addressed to Mr. Vance, received by Mr. Rush as postmaster and ended up in the hands of Mrs. Rush. The defendants do not deny that Mrs. Rush received the letters addressed to her ex-husband but claim that no felonious intent was involved.

*Findings of Fact*

Mrs. Rush married Richard S. Vance on May 15, 1953. They have two boys, Gerald and Stanley. During the marriage, policy number 945185 was purchased on the life of Richard S. Vance from Central Life Assurance Company. As Mr. Vance was an over-the-road truck driver, Mrs. Vance took care of the family business, which included signing documents on behalf of her husband and she adopted Mr. Vance's signature.

Mrs. Vance became an employee of the United States Postal Service on July 17, 1965 and became postmaster at Elliott, Iowa on November 11, 1972. In May 1975, Mr. Vance was involved in a motorcycle accident and was hospitalized. Policy number 945185 contained a premium waiver for the period of disability. On November 12, 1975, Mrs. Vance filed a petition seeking dissolution of her marriage to Richard S. Vance. The decree of dissolution was entered on June 23, 1976. Mr. Vance was awarded the property specifically listed in

the decree and the remaining unspecified property was awarded to Mrs. Vance. Central Life Assurance policy number 945185 on the life of Richard S. Vance was not specifically listed in the decree. As a result of Mr. Vance's disability, a second policy was automatically issued on his life by Central Life Assurance Company. This policy, number 1409984, was issued September 10, 1976, after the decree of dissolution.

On May 31, 1978, Mrs. Vance married Clarence Lovay Rush and they made their home in Elliott in the house awarded to Mrs. Vance in the dissolution of the marriage. The Rush's personal post office address, Box 101, Elliott, Iowa, was the same post office box that Mr. and Mrs. Vance had had prior to the dissolution.

On November 3, 1979, Mrs. Rush became postmaster at the nearby town of Griswold, Iowa. On February 23, 1980, Mr. Rush, who had been a rural mail carrier, became the postmaster at Elliott.

After an insurance investigator had interviewed Mr. Vance, Central Life determined that Vance was no longer disabled within the meaning of the policy and, on January 26, 1981, wrote him a letter advising him that premium payments were to resume as of February 15, 1981. The company addressed the letter to "Richard S. Vance, Box 101, Elliott, Iowa 51532". Mr. Vance did not receive this letter because Mr. Rush, the postmaster, told his wife about the letter and at her request and direction took it and gave it to her. He gave his wife all letters addressed to Mr. Vance that came to Elliott, Iowa from insurance companies after he became postmaster. During 1981, the premium notices addressed to Mr. Vance were intercepted by the defendants. On two occasions during that year, Mrs. Rush made premium payments totaling approximately $64. The defendants made oral inquiries of Central Life as to the cash value of policy number 945185 and policy number 1409984. In response to their request, Central Life mailed to "Richard S. Vance, P.O. Box 101, Elliott, Iowa 51532" an application for the cash surrender value of the policies. Mrs. Rush signed Richard S. Vance's name and returned the application. The application listed policy 1409984 as lost.

In response to that application, Central Life mailed checks for the cash surrender

**150**

value to "Richard S. Vance, Box 101, El-liott, Iowa 51532". The cash surrender value of policy number 945185 was $1470.09 and the cash surrender value of policy number 1409984 was $596.98. These letters were intercepted by Mr. Rush and delivered to Mrs. Rush, who stamped them "for deposit only" and deposited them in a savings account in an Omaha bank in her name and the name of her oldest son, Gerald.

Mr. Vance, who had also made inquiry about the cash surrender value of these policies filed a complaint of nonreceipt of mail with the postal service, which resulted in an investigation and the disclosure of the foregoing facts.

The Court finds as ultimate facts: (1) that Clarence Lovay Rush was postmaster at Elliott, Iowa on the dates pertinent hereto; (2) that when letters addressed to "Richard S. Vance at P.O. Box 101, Elliott, Iowa 51532" from insurance companies were received after Mr. Rush became postmaster, he asked his wife what should be done with them and she, claiming ownership of the insurance policies involved, told him to bring them to her, which was done; (3) that Mr. Rush knew Box 101 was no longer Mr. Vance's correct address; (4) that Mr. and Mrs. Rush intentionally removed letters addressed to Richard S. Vance at the previous address of Mr. Vance and Mrs. Rush (then Vance) and the current address of Mr. and Mrs. Rush from the mails without authority and contrary to postal regulations; (5) that such removal was done with the belief that Mrs. Rush was the owner of the policies with which the letters were concerned; (6) that the Rushes did not have the felonious intent to take and convert property of another to their own use; (7) that the letters containing the checks came into the possession of Mr. Rush in his capacity as postmaster and were intended to be conveyed by mail to Richard S. Vance; (8) that Mrs. Rush aided and abetted Mr. Rush in the removal of the letters from the mail by directing him to do so.

### CONCLUSIONS OF LAW

Under the Findings of Fact hereinabove set forth, the critical issue is what intent must the government establish in order to convict the defendants of the crime charged in 18 U.S.C. § 1709. If that section requires only the intent to remove the mail matter from the mail before delivery to the addressee, the defendants have been proven guilty beyond a reasonable doubt. If § 1709 requires intent to embezzle and convert the letter and its contents to the defendant's own use, the government has failed to prove its case beyond a reasonable doubt.

Section 1709, Title 18, United States Code, provides as follows:

Whoever, being a Postal Service officer or employee,

[a] embezzles any letter, postal card, package, bag, or mail, or any article or thing contained therein entrusted him or which comes into his possession intended to be conveyed by mail, or carried or delivered by any carrier, messenger, agent, or other person employed in any department of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General or of the Postal Service;

or

[b] steals, abstracts, or removes from any such letter, package, bag, or mail, any article or thing contained therein,

shall be fined not more than $2,000 or imprisoned not more than five years, or both.

(As an aid to its analysis, the Court has restructured § 1709, above, by denominating subsections "[a]" and "[b]". In its true form, § 1709 is an uninterrupted and undivided paragraph, with no denominated subsections.)

■ As the government indicated during pretrial discussions, § 1709 describes two separate crimes.

(1) embezzlement of *mail* (§ 1709[a]);

(2) theft, abstraction, or removal of mail *contents* (§ 1709[b]).

As drafted, count 1 of the indictment blurs the distinction between the two crimes by charging that defendants "did embezzle, steal and remove mail, to-wit: an envelope containing two checks * * * and removed said checks from said envelope * * *."

█ Although the words "abstract or remove" used in the portion of § 1709 that has been designated here as [b] do not, in ordinary usage, carry a connotation of a felonious intent and there is authority for the proposition that such intent is not required for a conviction under that portion of § 1709, *United States v. Greene,* 349 F.Supp. 1112, 1114 (D.Md.1971), the Court is of the opinion that a felonious intent to convert the property of another to one's own use is an essential element to convict under both portions of § 1709.

The verb in subsection [a] of § 1709 is "embezzles" which requires such specific intent. *United States v. First,* 600 F.2d 170 (8th Cir.1979). In subsection [b], the word "steals" precedes "abstracts or removes". The Court is of the opinion that it is highly unlikely that Congress intended to intermingle crimes requiring a felonious intent with those that do not require such intent without both making a more obvious distinction and providing a lesser penalty for the latter crimes.

█ In determining whether the specific felonious intent to convert is necessary under § 1709, it is helpful to also consider §§ 1702, 1703 and 1708. Although these statutes are poorly drafted and far from clear, the Court believes that § 1702 and § 1703 are roughly equivalent, as are § 1708 and § 1709. The principal difference being that § 1702 and § 1708 apply generally, while § 1703 and § 1709 apply only to postal employees. The similarity in the titles of the sections tends to confirm this position. The authorities relating to § 1702 and § 1708 would at least, by analogy, apply to § 1703 and § 1709.

█ In the Court's opinion, §§ 1702 and 1703 are concerned with the integrity of the mail. Sections 1708 and 1709 are concerned with the theft or embezzlement of the mail

and require specific felonious intent. The following cases also support this view:

The nature of the offenses created by the two sections differ in essential particulars. Section 5469 [1708] is concerned more especially with thefts and embezzlements from the mails for purposes of gain. Section 3892 [1702] deals with unauthorized meddling with the mails for the purpose of gratifying mere malice or a prying curiosity. The intent or purpose which constitutes the gist of the offense is one thing in one of the sections, and quite a different thing in the other. *U.S. v. Davis,* 33 F. 865, 867 (W.D.Mich. 1888).

Section 1702 prohibits the taking of mails, the "intermedling with correspondence transmitted by mail, 'before it has been delivered to the person to whom it was directed.'" (cite) Section 1708, on the other hand, prohibits the theft or embezzlement of mail.

*U.S. v. Bradford,* 493 F.2d 1282, 1284 (7th Cir.), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974).

### CONCLUSION

█ In sum, based upon the Court's determination that felonious intent is an element under § 1709, the government has not met its burden of proving that the defendants are guilty of violating 18 U.S.C. § 1709. It follows that the government has also failed to carry its burden with respect to the aiding and abetting charge, based upon the unsuccessful § 1709 charge, and the defendants are accordingly not guilty of violating 18 U.S.C. § 2.

IT IS THEREFORE ADJUDGED that the defendants in the above-entitled criminal action are not guilty of the crimes charged in Count 1 of the indictment herein.

IT IS FURTHER ORDERED that the Clerk enter judgment of acquittal in accordance with this Ruling and Order.